# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 23-60620

Inhance Technologies, L.L.C.,
*Petitioner*,

*versus*

United States Environmental Protection Agency;  Michael S. Regan, *Administrator, United States Environmental Protection Agency*,
*Respondents*.

Petition for Review from an Order of the Environmental Protection Agency

Agency No. SN-23-0002

Agency No. SN-23-0004 Agency No. SN-23-0005 Agency No. SN-23-0003
Agency No. SN-23-0006 Agency No. SN-23-0008 Agency No. SN-23-0009
Agency No. SN-23-0010 Agency No. SN-23-0011

## REPLY IN SUPPORT OF MOTION TO INTERVENE

Robert M. Sussman, DC Bar No. 226746
SUSSMAN & ASSOCIATES
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
bobsussman1@comcast.net

Paula Dinerstein, DC Bar No. 333971
Laura Dumais, DC Bar No. 1024007
PUBLIC EMPLOYEES FOR ENVIRONMENTAL
RESPONSIBILITY
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
202-265-7337
pdinerstein@peer.org, ldumais@peer.org

i

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.1.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- Inhance Technologies LLC (Petitioner)

- Hogan Lovells US LLP (Counsel for Petitioner)

- Catherine E. Stetson (Counsel for Petitioner)

- Susan M. Cook (Counsel for Petitioner)

- Adam M. Kushner (Counsel for Petitioner)

- J. Tom Boer (Counsel for Petitioner)

- Marlan Golden (Counsel for Petitioner)

- Claire Adkins (Counsel for Petitioner)

- Aurora Capital Partners Management LP (Interested Party)

- United States Environmental Protection Agency (Respondent)

- Michael S. Regan, Administrator, United States Environmental Protection Agency (Respondent)

- Merrick B. Garland, Attorney General, United States Department of Justice (Counsel for Respondents)

- Daniel Martin (Counsel for Respondents)

- Richard Gladstein (Counsel for Respondents)

- Jonah Seligman (Counsel for Respondents)

- Public Employees for Environmental Responsibility (PEER) (Movant for Intervention)

- Center for Environmental Health (Movant for Intervention)

- Jay De La Rosa (Movant for Intervention)

- Robert M. Sussman (Counsel for Center for Environmental Health and Jay De La Rosa)

- Paula Dinerstein (Counsel for PEER)

- Laura Dumais (Counsel for PEER)

- Monica Mercola (Counsel for PEER)

- Michael D. Fiorentino (Counsel for PEER, CEH and Jay De La Rosa)


/s/ Robert M. Sussman
Robert M. Sussman

*Counsel for Movants for Intervention*

## **TABLE OF CONTENTS**

CERTIFICATE  OF INTERESTED PERSONS…………………………………..ii

TABLE OF AUTHORITIES………………………………………………………v

      I.      Allowing Intervention Will Not Delay This Case……………………1

      II.    Movants' Intent to Move to Vacate the Stay if Intervention Is Granted Will Not Derail Inhance's Appeal…………………………………..3

      III.   Movants Have Demonstrated Protectable Interests in this Case……...4

      IV.   The Government Will Not Adequately Represent Movants' Interests..7

CONCLUSION……………………………………………………………….11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES:**

*Brumfield v. Dodd,* 749 F.3d 339 (5th Cir. 2014)..…………………………………...4

*Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984)……………………………………10

*City of Houston v. American Traffic Solutions, Inc*., 668 F.3d 291 (5th Cir. 2012)...10

*Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198 (5th Cir. 2016)………………4

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania,*
140 S. Ct. 2367 (2020)……………………………………………………5

*Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998)…………………………………...5

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015)………………………………4

*Texas v. United States*, 945 F.3d 355 (5th Cir. 2019)…………………………...5

*United States of America v. Inhance Technologies LLC* (No. 22- 05055, E.D. Pa.)...2

*United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755 (5th Cir. 1995)………………10

**STATUTES:**

15 U.S.C. § 2613(b)……………………………………………………..7

**RULES:**

Federal Rule of Civil Procedure 24………………………………………..4

Federal Rule of Appellate Procedure 15(d)………………………………..2

Fifth Circuit Rule 15.5……………………………………………………..2

Movants Center for Environmental Health (CEH), Public Employees for Environmental Responsibility (PEER) and Jay De La Rosa file this Reply in support of their December 20, 2023 motion to intervene.

## I.     Allowing Intervention Will Not Delay This Case

Despite Petitioner's dire warnings, movants' intervention will not "derail" or "upend" the briefing and argument schedule in this case or transform it into "drawn-out litigation." Pet. Opp. (ECF 70) at 1, 2, 3, 6. Movants are already working on a merits brief and plan to file it on January 22, 2024, the same day that respondents' brief is due. ECF 29. They will also be prepared to participate in oral argument on February 5, 2024 and will not seek a postponement of the argument date. After the argument, the issues will be ripe for decision by this Court, just as they would if intervention were denied.

The only impact of intervention on Inhance is that it will need to address movants' brief on the merits in the Reply it must file in any event on January 29. This is a normal burden of litigation and would not place undue hardship on Inhance counsel. Inhance has already consented to the filing of two amicus briefs, totaling 48 pages, from industry groups opposing the EPA orders. ECF 62-1 and 66-1. It is hard to understand why additional briefing *in support of the orders* should be objectionable.

The motion to intervene was timely filed under FRAP 15(d) and Fifth Cir. R. 15.5. Nonetheless, claiming that movants "sat on their hands," Inhance complains that their intervention motion was filed 13 days after its petition for review. Pet. Opp. at 3. It fails to mention, however, that the Government and Inhance made no effort to notify movants of the petition for review and stay motion despite beginning discussions of Inhance's potential challenge to the EPA orders shortly after they were issued on December 1. ECF 6-1 at 8.

The movants, Inhance and the Government are all parties to *United States of America v. Inhance Technologies LLC* (No. 22- 05055, E.D. Pa.), which seeks injunctive relief against Inhance's continuing violations of the significant new use rule (SNUR) at issue in this case. The Court in that case ordered the submission of briefs on the implications of the EPA orders on December 11, 2023 and held a case management conference on December 14. Eastern District ECF 70. Inhance and the Government were thus well aware of movants' strong interest in any challenge to the orders in the court of appeals. But because movants were kept in the dark about the stay motion until it was granted on December 12, their counsel had only a week to seek membership in this Court's bar, reach out to possible declarants and obtain several declarations, and draft and assemble the intervention motion. Ironically, Inhance took twelve days to respond to the motion, further delaying its

resolution notwithstanding its professed concern about slowing progress in this case.

## II.     Movants' Intent to Move to Vacate the Stay if Intervention Is Granted Will Not Derail Inhance's Appeal

Inhance urges the Court to deny intervention in order to block movants from seeking to vacate the unopposed stay entered on December 12, 2023. Pet. Opp. at 5-6. However, despite Inhance's claims, there is no reason why such a motion would prevent expedited consideration of this case. Briefing on the motion to vacate would proceed in parallel with briefing and oral argument on the merits and would not affect the current schedule. Inhance has already filed its merits brief so its only remaining task is to file a reply. (The Government has not yet filed its brief, but does not oppose intervention.) To conserve judicial resources, the Court could delay a ruling on the motion to vacate until after oral argument on February 5, 2024. This would not change the status quo or harm Inhance since the stay will have no practical effect until February 28, 2024, the date on which the EPA orders would take effect in the absence of a stay.

Inhance portrays the motion to vacate as "relitigating" settled issues, Pet. Opp. at 6, but the stay was not "litigated." Rather, it was unopposed and the Court therefore had no occasion to consider whether Inhance had met the high standards for this extraordinary remedy under Fifth Circuit case law. As movants will show, the stay suffered from serious flaws and further briefing would give the Court an

opportunity to examine these important issues for the first time. Inhance could of course defend the stay and reiterate why it believes it needs the stay to protect its business from the impact of the EPA orders. But it would be for the Court to decide whether Inhance has established a probability of success on the merits and shown that the balance of equities is strongly in its favor. Enabling movants to address the merits of a stay after intervention would thus assure that the Court appropriately weighs the larger interest in protecting public health from dangerous chemicals in addition to Inhance's narrow business interests.

### III.    Movants Have Demonstrated Protectable Interests in this Case

A Rule 24(a) inquiry "is a flexible one, which focuses on the particular facts and circumstances surrounding each application . . . measured by a practical rather than technical yardstick*." Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (quotation omitted). "An interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). The adequacy of the movant's interests "may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd,* 749 F.3d 339, 341 (5th Cir. 2014).

Inhance ignores these statements by this Court and instead seeks to measure the adequacy of the movants' interests against the more exacting requirements for Article III standing. Pet. Opp. at 6-10. This is a red-herring. "'Article III does not require intervenors to independently possess standing' when a party already in the lawsuit has standing and seeks the same 'ultimate relief' as the intervenor." *Texas v. United States*, 945 F.3d 355, 377 (5th Cir. 2019), citing *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998). See also *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020) ("Under our precedents, at least one party must demonstrate Article III standing for each claim for relief"). Here, while the Government and movants have different interests and approach the issues from different perspectives, they seek the same ultimate relief: affirmation of the EPA orders by the Court.[1]

Apart from advocating an inapplicable standing requirement, Inhance has no persuasive rejoinder to the protectable interests in this case demonstrated by movants. The risk assessment accompanying the EPA orders documents in exhaustive detail the serious health effects of exposure to LCPFACs. Int. Mot.

---

[1] While elsewhere maintaining that the Government and movants seek the same outcome in this case, Inhance claims that movants' opposition to the stay somehow demonstrates that they seek different relief and movants must therefore demonstrate standing. Pet. Opp. at 7. But their opposition to a stay requested by petitioner says nothing about whether movants disagree with the Government on the ultimate relief in this case – a decision upholding the EPA orders.

(ECF 46) at 8-9. As the orders emphasize, "even small releases of PBT [persistent, bioaccumulative and toxic] PFAS into the environment over time can contribute to considerable exposure and potential risk" and "such releases can occur at any point during the lifecycle of a fluorinated container, from manufacture to disposal." Accordingly, EPA "cannot control potential exposures to the SNUN Chemical Substances through means other than a prohibition on the manufacture of these substances." In their declarations, PEER and CEH staff and Jay De La Rosa demonstrate their long-standing and frequent use of plastic containers and their concern that they are exposed to LCPFACs formed during fluorination.  ECF 46-2-9. This gives them a "protectable interest" in the outcome of this case because, if upheld, the EPA orders would prevent this dangerous exposure but, if set aside, declarants would remain at risk.

Inhance discounts this interest because there is no "proof" that the declarants have used containers fluorinated by Inhance.  Pet. Opp. at 8-10. This is hard to swallow given that Inhance is the sole provider of post-mold fluorination services in the US and fluorinates over 120 million containers a year that are used throughout the economy. ECF 6-1 at 19. Equally troubling is that any uncertainty about the presence of LCPFACs in containers used by consumers has been caused by Inhance itself, which has systematically forced EPA to withhold from disclosure hundreds of pages of test data on fluorinated containers and detailed information

6

on their end-uses, contrary to TSCA Section 14(b), 15 U.S.C. § 2613(b), which provides that health and safety data and aggregate use information cannot be protected as confidential business information. Record Index ECF 38 (showing vast number of Inhance submissions to EPA claimed confidential). If declarants cannot verify whether the containers they use contain LCPFACs, the blame thus rests with Inhance, not the declarants themselves.

Inhance has also overlooked an important protectable interest that movants highlighted in their motion to intervene: the interaction between this appeal and the pending enforcement action against Inhance in the Eastern District of Pennsylvania in which movants are plaintiff-intervenors. As explained in the motion to intervene, this action may still be viable even if the Court sets aside the EPA orders because Inhance's production of LCPFACs would remain a violation of the SNUR. Int. Mot. at 15. However, much depends on how the Court addresses the SNUR-related legal issues presented in Inhance's Brief. Therefore, movants have a protectable legal interest in advocating for an outcome in this case that leaves its claims for injunctive relief in the Pennsylvania case intact.

## IV.    The Government Will Not Adequately Represent Movants' Interests

Inhance lamely insists that any differences between the Government and movants are not "over substance but over litigation strategy." [2] Pet. Opp. at 11. However, the disconnect between the parties in this case predates the onset of litigation and goes far deeper than day-to-day courtroom tactics – for at least 18 months, movants and the Government have fundamentally differed over whether and how to hold Inhance accountable for its unsafe production of LCPFACs in violation of the SNUR.

The examples of this disagreement are numerous and continue today. As described in Int. Mot. at 18-23, EPA (1) failed to take action against Inhance for over a year after its own testing in early 2021 showed that containers treated by the fluorination process contained nine different LCPFACs; (2) continued to delay enforcement for another twenty months even after its March 1, 2022 Notice of Violation (NOV) found Inhance in non-compliance with the SNUR and unsuccessfully demanded that Inhance stop producing LCPFACs and submit SNUNs; (3) filed suit against Inhance only after movants had submitted a notice of intent to sue with the avowed goal of preempting movants' action; and (4) devoted nearly a year to reviewing Inhance's SNUNs and collecting additional data while

---

[2] Inhance misrepresents movants as arguing that "the presumption [of adequate representation where the government and movant ostensibly seek the same ultimate objective] does not apply." Pet. Opp. at 10. Movants never argued that the presumption was not applicable in the first instance. Rather, movants demonstrated that the showings necessary to *overcome* the presumption were met in this case.

Inhance continued production in violation of TSCA, even after the serious dangers to health of the fluorination process were fully apparent and orders stopping fluorination plainly warranted.

This pattern of delay and inaction continued as the enforcement litigation filed by the Government and movants progressed in the Eastern District of Pennsylvania. For example, the Government refused to move for injunctive relief against Inhance's SNUR violations even as movants pressed forward with their own motion for summary judgment and equitable relief. And only three weeks ago, the Government withdrew its motion for partial summary judgment on liability while movants urged the district court to grant their summary judgment motion. Eastern District ECF at 80.

The latest example of Government inaction was its acquiescence in Inhance's stay motion and failure to file a response, a course that movants believe was unnecessary and unwise and sacrificed public health to short-term expediency. Nothing could more powerfully demonstrate that movants and the Government have very different perceptions of how this case affects the public interest and the proper balance to be struck between commercial considerations and human health protection. The Government's long and continuing history of inaction on fluorinated containers thus demonstrates the "adversity of interest" and "nonfeasance" that this Court has deemed sufficient to overcome the presumption

of adequacy of representation. *United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995).

Inhance attempts to distinguish *City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012) by asserting that "[i]t goes without saying that EPA's litigation strategy generally does not include negotiating a result counter to EPA's interests." Pet. Opp. at 11. But it is far from clear how an Agency that has delayed and evaded tough action against Inhance and is even now letting it off the hook would define its "interests." For example, EPA could agree to vacate its orders rather enforcing them during a remand of this case by the Court or could dismiss its enforcement claims in the Eastern District of Pennsylvania under a weak settlement agreement with Inhance. Alternatively, the Government could concede in this case that its LCPFAC SNUR was flawed under TSCA and its orders should be withdrawn or stayed while the SNUR is reconsidered and revised. Movants would vigorously oppose these accommodations if the Government proposed them. Intervention is thus required so movants can assert their interests should the Government fail to protect them, as it already has done by assenting to a stay for the duration of this appeal.

In *Bush v. Viterna*, 740 F.2d 350, 357 (5th Cir. 1984), this Court stated that the movant "has not indicated a single issue on which it and the [party presumed to represent its interest] differ" and "has not demonstrated that it has anything to

contribute to this lawsuit beyond underlining the positions already taken by the Commission." This case could not be more different. Movants have been at odds with EPA from the very start of this matter, uncovering evidence of PFAS contamination that EPA had not discovered on its own and continuously spurring a reluctant EPA to take action to protect the public from harmful LCPFACs and stop Inhance's flagrant violations of TSCA. Moreover, unlike in *Bush v. Viterna,* movants and the Government *have* taken opposing positions, first in the district court on the need for equitable relief and now in this case on the propriety of staying EPA's orders. Thus, adversity of interests is real, not hypothetical, and easily rebuts any presumption that the Government will be an effective advocate of movants' interests in this case.

## CONCLUSION

The motion to intervene should be granted.

Dated: January 4, 2024

Respectfully submitted,

/s/ *Robert M. Sussman*
Robert M. Sussman
SUSSMAN & ASSOCIATES
DC BAR NO 226746
3101 Garfield Street, NW
Washington, DC 20008
(202) 716-0118
bobsussman1@comcast.net

/s/ *Paula Dinerstein*
Paula Dinerstein *Pro Hac Vice*

11

PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY
DC BAR NO. 333971
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
202-265-6391
pdinerstein@peer.org

/s/ *Laura Dumais*
Laura Dumais
PUBLIC EMPLOYEES FOR
ENVIRONMENTAL RESPONSIBILITY
DC BAR NO. 1024007
962 Wayne Avenue, Suite 610
Silver Spring, MD 20910
202-792-1277
ldumais@peer.org

**CERTIFICATE OF
COMPLIANCE**

I hereby certify that this reply complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Times New Roman, a proportionally spaced font. I further certify that this reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2558 words, according to the count of Microsoft Word.

/s/ *Robert M. Sussman*
Robert M. Sussman
*Counsel for Movants for Intervention*

# CERTIFICATE OF
# SERVICE

I hereby certify that, on January 4, 2024, I electronically filed the foregoing motion with the Clerk of Court by using the appellate CM/ECF system. In addition, we will provide counsel for Respondents and Petitioner with courtesy copies transmitted by electronic mail promptly upon filing.

*/s/ Robert Sussman*
Robert Sussman
*Counsel for Movants*
*for Intervention*